IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DONALD WARE,                            )
                                        )
            Petitioner,                 )
                                        )
      v.                                )      Case No.  4:03CV01334 ERW/AGF
                                        )
DONNA McCONDICHIE,                      )
                                        )
            Respondent.                 )

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pro se petition of Missouri state prisoner

Donald Ware for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action was

referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended

disposition.  For the reasons set forth below, the Court believes that habeas relief should

be denied.

**BACKGROUND**

Petitioner was convicted by a jury on February 12, 1998, of two counts of forcible

rape, four counts of armed criminal action, four counts of kidnaping, and one count of

first-degree property damage.  He was sentenced as a prior, persistent, and predatory

sexual offender, under Mo. Rev. Stat. § 558.018, to 30 years on each of the rape counts,

15 years on each of the kidnaping and armed criminal action counts, and six months on

the property damage count, all sentences to run consecutively.  Resp. Ex. B at 157-63.

Petitioner's convictions and sentences were affirmed on direct appeal on June 22, 1999.

His motion for state post-conviction relief was denied on October 1, 2001, and this denial

was affirmed on appeal on December 18, 2002.

In his federal habeas action filed on September 17, 2003, Petitioner asserts that his

constitutional rights were violated in the following four ways:

> (1) The trial court improperly denied the requests of Petitioner and his
> appointed counsel for the appointment of substitute counsel due to a
> breakdown in communication between Petitioner and appointed counsel,
> and failed to inquire as to the nature of the breakdown;

> (2) The trial court improperly overruled defense counsel's objections to the
> prosecutor's statements during closing argument that Petitioner's outbursts during
> the trial were indicative of Petitioner's propensity for violence, and that he should
> be convicted to prevent him from committing further crimes;

> (3) The trial court improperly sentenced Petitioner as a predatory sexual offender
> because Mo. Rev. Stat. § 558.018.5 is unconstitutional in that it does not require
> a conviction for a prior offense before punishment can be enhanced based upon the
> prior act; and

> (4) Trial counsel rendered ineffective assistance in failing to move for a mistrial
> when the treating physician of one of the victims was allowed to testify, over
> counsel's objection, as to what the victim had told her about the crimes.

Respondent argues that this Court is procedurally barred from considering

Petitioner's third claim, and that Petitioner is not entitled to habeas relief on his remaining

claims because the state courts' adjudication of them did not involve an unreasonable

application of clearly established Supreme Court law or an unreasonable determination of

the facts.

## STATE COURT PROCEEDINGS

### Pretrial and Trial Proceedings

On February 3, 1997, Petitioner was indicted for the 11 crimes of conviction. He

was also charged with being a prior and persistent offender, subjecting him to enhanced punishment if found guilty of the other offenses.  Id. at 13-16.  On February 10, 1997, an assistant public defender was appointed to represent Petitioner.  Id. at 20.  On April 16, 1997, assistant public defender Robert Lundt entered his appearance as counsel for Petitioner.  On November 5, 1997, Petitioner filed a pro se motion to withdraw Mr. Lundt as Petitioner's counsel.  Petitioner alleged that Mr. Lundt did not maintain communication with Petitioner, having seen him only twice; behaved in an unprofessional manner; was intimidating Petitioner into accepting a plea agreement instead of going to trial; and was not properly preparing for trial or consulting with Petitioner.  Id. at 29-31. The trial court did not address this motion, and Mr. Lundt continued in his representation of Petitioner.

On January 30, 1998, ten days before trial, a substitute information was filed, adding the charge that Petitioner was a predatory sexual offender under Mo. Rev. Stat. § 558.018.  That statute authorizes an extended sentence if the defendant had previously committed any enumerated sexual felony, whether or not the act resulted in a conviction. Mo. Rev. Stat. § 558.018.5(2).  The bases set forth in the substitute information for the prior and persistent-offender charges were convictions for burglary, kidnaping, and buying and receiving stolen goods.  The basis for the predatory-sexual-offender charge was that Petitioner had "committed acts against more than one victim which would constitute an [enumerated] offense." Id. at 73-76.

The record indicates that another attorney from the Public Defender's Office acted as Mr. Lundt's co-counsel during the four-day trial, which began on February 9, 1998.

Resp. Ex. A at 10. On the first day of trial, the trial court heard evidence on, and denied, Petitioner's motion to suppress identification evidence. Resp. Ex. A at 63-93. The transcript of this hearing reflects that at no time during the proceeding did Petitioner mention his motion to have Mr. Lundt withdrawn. The transcript also reflects that on two occasions Petitioner spoke out, saying when a witness was testifying, "That's not true," and asking the court if he could say something. Each time Petitioner was told to consult with Mr. Lundt, which he apparently did. Id. at 79, 89.

At the beginning of the second day of trial, before the presentation of any evidence, the court explained to Petitioner that he could not call out things during the trial, and that if he had any suggestions, he should whisper or write them to one of his attorneys. Petitioner agreed. During the prosecution's presentation of its evidence, however, Petitioner spoke out several times, stating that certain witnesses' testimony was not true, and at one point, that he did not want to proceed with the trial. Id. at 225, 234-35, 245, 270-71. The trial court cautioned Petitioner about his behavior, and after the last interruption when Petitioner stated that he did not want to proceed, admonished him outside the hearing of the jury that such behavior could not continue. Petitioner would not assure the trial court that he would sit quietly, and the trial court ordered him excluded from the courtroom until he would give such assurance. The court ordered that Petitioner be placed in a room near the courtroom so that defense counsel could consult with him if needed, and told the sheriff to ask Petitioner at each recess/break whether he was ready to return to the courtroom. Id. at 271-77. At that point, Mr. Lundt moved for a mistrial. The court denied the motion, stating that Petitioner "can't be rewarded for his

misbehavior," and the trial proceeded with Petitioner excluded.  Id. at 277-79.

After the lunch recess, Mr. Lundt told the court at a conference in chambers that Petitioner wanted to return to the courtroom, and had assured Mr. Lundt that he did not intend to make any further outbursts.  The court ascertained from Petitioner that he was ready to behave appropriately in the courtroom.  The court reminded Petitioner that if during the trial he had any suggestions as to strategy, he should write them down and show them to his attorney.  Petitioner agreed, apologized to the court, and the trial proceeded with Petitioner present.  Id. at 305-08.

On the morning of the third day of trial, the court made a record in chambers at approximately 10:00 a.m. that as the jury was being seated, Petitioner struck Mr. Lundt in the courtroom.  A sheriff testified on the record that he had been standing behind Petitioner, when Petitioner jumped up and struck Mr. Lundt in the head and said, "You're working for the State."  The sheriff testified that he grabbed Petitioner, wrestled with him, and with the assistance of another sheriff escorted Petitioner out of the courtroom.  Id. at 448-51.

Mr. Lundt expressed his readiness to proceed with his representation of Petitioner, but requested a recess until 1:00 p.m. that day.  The court agreed and decided that he would tell the jury that research needed to be done, and that there would be a recess until 1:00 p.m.  Prior to the resumption of trial that afternoon, Mr. Lundt filed a motion to withdraw as counsel on the ground that the attorney-client relationship had completely broken down since Petitioner struck him, and that Mr. Lundt's ability to continue representing Petitioner was compromised.  The court expressed its view that to grant a

mistrial at that point in the proceedings would reward Petitioner for his misconduct and send the message that all a defendant had to do to get a mistrial if he saw that the evidence was going against him was assault his attorney in court. The court related that it had instructed the sheriffs that morning to remind Petitioner that he had to behave appropriately, and that the sheriffs reported back that they had done so and that Petitioner appeared calm. The court explained that it therefore believed that the assault on Mr. Lundt soon afterwards was a "totally premeditated act designed to get a mistrial which we can not acquiesce in." The court ordered Petitioner excluded from the trial. Mr. Lundt then made a formal motion for a mistrial, which was impliedly denied, and the trial proceeded. Id. at 456-60.

Thereafter, Mr. Lundt cross-examined the two remaining witnesses for the prosecution, called two alibi witnesses for the defense, filed a timely motion for judgment of acquittal, made appropriate objections, and presented a competent closing argument. On February 12, 1998, the day that the jury returned its verdicts, the trial court wrote "denied" on Petitioner's November 1997 motion to withdraw Mr. Lundt as defense counsel. Resp. Ex. B at 77.

**Evidence and Prosecutor's Closing Argument**

The state presented evidence that on the night of December 27, 1996, Petitioner abducted two teenage girls as they were walking on the street. Petitioner displayed a gun and forced the two girls into the basement of a vacant building, where he tied up one of the girls with shoelaces. He then took the other girl to another building and raped her. Petitioner committed a similar crime on the night of January 23, 1997. Again, he

abducted two young women at gunpoint as they were walking down the street. Petitioner took the two victims to a vacant house and tied one of the young women up with her shoelaces. He took the other young woman, Connie Turner, to another building and raped her. Based upon a description of the assailant and his car given to the police by one of the victims, the police arrested Petitioner on January 24, 1997. All four women identified Petitioner as their assailant in police lineups, one based on voice identification. The victims also identified Petitioner in court.

One of the witnesses called by the prosecution was Donna Perdan, M.D., the physician who treated Ms. Turner at the hospital after the rape. The prosecutor asked Dr. Perdan what Ms. Turner had told her about the crimes. Defense counsel's hearsay objection was overruled on the ground that Dr. Perdan could testify, as a treating physician, about information utilized in treating Ms. Turner. Dr. Perdan then testified in detail as to what Ms. Turner had told her about the abduction and rape. During this testimony, defense counsel again objected on hearsay grounds, stating that the testimony was not relevant to the treatment provided by Dr. Perdan. The objection was overruled. When Dr. Perdan finished relating Ms. Turner's account of events, she testified that she (Dr. Perdan) assembled a "rape kit" and treated Ms. Turner with antibiotics for sexually transmitted diseases, gave her a "morning after pill," and recommended follow-up at a clinic for sexual abuse at Children's Hospital. Resp. Ex. A at 380-84. Dr. Perdan's account of Ms. Turner's story paralleled the story later testified to by Ms. Turner herself.

Petitioner presented two witnesses in support of an alibi defense. He did not testify on his own behalf. During closing argument, the prosecutor stated as follows:

7

"We saw and heard through the words of these girls and through the demeanors and actions of everyone in here a man who is apparently on the surface calm but underneath we glimpsed at the danger and violence of a predator."  Defense counsel's objections on the grounds that this was irrelevant, prejudicial, and inflammatory were overruled.  The court reminded the jury that this was argument, and the prosecutor continued as follows: "We have a glimpse of what these girls told us this man is all about.  We had just a glimpse of what he did to them that night."  Id. at 556-57.  Later, toward the end of his argument, the prosecutor stated, "We had a glimpses [sic] of what these girls said when they identified him.  You saw that through the actions and demeanor of everyone in this room.  Power and control for this man rule.  It's time to stop him and time to tell him you are not going to touch our children, our young women again."  Id. at 569-70.  Defense counsel's objection that the prosecutor was personalizing the crime was overruled, and the prosecutor continued, "The children and the young people, women of this City need your vote right now.  Right now you are their voice and you are their only appeal.  You must convict him of all of those offenses."  Id. at 570.  The last instruction given to the jury before closing arguments was that the arguments were intended to help them in understanding the evidence and applying the law, but that the arguments were not evidence.  Doc. #19-2 at 20.

## Direct Appeal

On direct appeal, Petitioner raised the first three claims presented in his present habeas petition, as set forth above.  Resp. Ex. C.  The Missouri Court of Appeals rejected all three claims.  With regard to the claim that the trial court improperly denied

Petitioner's request for new counsel, the appellate court stated that it was clear from the record that Petitioner "continuously and purposefully attempted to disrupt the trial from the outset." The appellate court deferred to the trial court's judgment that Petitioner's in-court assault of Mr. Lundt was a premeditated act designed to occasion a mistrial. The appellate court further stated that following the assault, Petitioner continued to cooperate with Mr. Lundt, and Mr. Lundt continued to "ably defend" Petitioner. Resp. Ex. E at 4-6.

The Missouri Court of Appeals noted that although the trial court never ruled on Petitioner's pretrial motion to withdraw the appointment of Mr. Lundt, Petitioner had failed to allege in that motion "a single instance of conflict with his attorney with specificity." The court also noted that Petitioner failed to renew the motion at trial; that the trial continued with Mr. Lundt acting as defense counsel without protest by Petitioner; and that when Mr. Lundt asked to withdraw after the in-court assault, the trial judge "simply dealt with a bad situation the best that he could." The appellate court concluded that under the facts of the case, it could not assign error to the trial court in this matter. Id. at 6.

The appellate court next addressed Petitioner's claim that the trial court improperly overruled defense counsel's objections to the prosecutor's statements during closing argument which suggested that Petitioner's outbursts during the trial were indicative of his propensity for violence, and that the jury should convict Petitioner in order to stop him from committing more crimes. The court held that the prosecutor's comments about Petitioner's behavior during trial could not have inflamed the jury any more than witnessing the assault firsthand, and that Petitioner's misconduct should not be rewarded

by granting him a new trial. The court then stated that it was acceptable for a prosecutor to argue "general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens and the jury's duty to uphold the law," and held that in the present case, the prosecutor's challenged statements clearly fell within this range of proper argument. Id. at 8.

Turning to Petitioner's third point on appeal, the Court explained that as Petitioner had not challenged at trial the constitutionality of Missouri's predatory sexual offender statute, this claim was subject only to the appellate court's discretionary plain error review. The court noted that the Missouri Supreme Court had rejected "similar attacks" to the constitutionality of § 558.018 in State v. Gilyard, 979 S.W.2d 138, 142-43 (Mo. 1998) (en banc). The court then stated that Petitioner's "unpreserved claims fail to raise substantial ground for finding plain error in light of that fact that the Missouri Supreme Court has definitively rejected these arguments. Therefore, we decline to review these claims [for plain error.]" Resp. Ex. E at 8-9.

**State Post-conviction Proceedings**

One of the claims presented in Petitioner's motion for state post-conviction relief was that trial counsel rendered ineffective assistance in failing to preserve for appellate review the issue of the trial court's admission, over defense counsel's objection, of Dr. Perdan's testimony regarding what Ms. Turner told her had occurred on the night of January 23, 1997. Petitioner asserted that this testimony bolstered Ms. Turner's own testimony, resulting in prejudice to Petitioner. Petitioner complained that by not moving for a mistrial after the hearsay objection was overruled, and not including the issue in the

motion for a new trial, counsel had failed to preserve the matter for appellate review. Resp. Ex. G at 46-50.

In rejecting this claim, the motion court first cited Missouri law to the effect that statements made to a treating physician by a patient that are reasonably related to medical treatment are an exception to the hearsay rule; and that statements to explain conduct, rather than the truth of the fact testified to, are not inadmissible hearsay. The court then held that even assuming there was error in admitting all of Dr. Perdan's challenged testimony, this testimony "could not have had any conceivable effect on the outcome of the trial"; and that there was no reasonable probability that (1) the outcome of the appeal would have been different had counsel preserved the issue, or that (2) the trial court, having denied objections to the evidence, would have granted a mistrial. Resp. Ex. G at 4-5.[1]

On appeal, the Missouri Court of Appeals held that the trial court did not clearly err in finding that Dr. Perdan's challenged testimony was offered to explain her subsequent conduct in ordering a sexual assault forensic examination (SAFE) and preparing a rape kit. The appellate court further held that to the extent that Dr. Perdan's testimony was unnecessarily detailed, it could not have resulted in sufficient prejudice to Petitioner to have warranted the drastic remedy of a mistrial, as Petitioner presented an alibi defense and the testimony in question had nothing to do with the identity of the assailant. The court noted that at trial, defense counsel did not object to Dr. Perdan's

---

[1] The same judge who presided at the trial ruled on the motion for post-conviction relief.

testimony on the basis that it constituted improper bolstering of Mr. Turner's testimony, and that Petitioner did not assert in his post-conviction motion that counsel was ineffective for this particular failure.  Resp. Ex. J.

## DISCUSSION

**Procedural Default**

Respondent argues that this Court is procedurally barred from considering the merits of Petitioner's claim that the provision of Missouri's predatory sexual offender statute permitting an extended penalty for uncharged crimes is unconstitutional.  The Court agrees.  Under the doctrine of procedural default, a federal habeas court is barred from considering a claim that a state court rejected on independent and adequate state grounds, unless the petitioner establishes cause for the default and actual prejudice resulting from the alleged violation of federal law, or that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Clemons v. Luebbers, 381 F.3d 744, 754 (8th Cir. 2004).

Here, the Missouri Court of Appeals specifically noted Petitioner's procedural default in failing to raise this claim at trial.[2]  The state appellate court then stated that it declined to review the claim for plain error.  This Court does not believe that the state appellate court's reference to State v. Gilyard constituted plain error review of the merits of Petitioner's claim, so as to lift the procedural bar to this Court's addressing the merits

---

[2]    The Court  notes that Petitioner also did not raise the claim in his post-trial motion for a new trial.  Resp. Ex. B at 149-56.

of the claim.  Cf. Rogers v. Kemna, No. 05-0792CVWGAFP, 2006 WL 344773 at *2-3, (W.D. Mo. Feb. 14, 2006) (where state appellate court extensively analyzed the merits of defaulted constitutional claim, despite court stating that it declined plain error review, federal habeas court could consider the merits of the claim too).

Petitioner has not asserted any cause to excuse the procedural default or that he was actually innocent of being a predatory sexual offender, as that term is defined by Missouri law.  Thus, this Court is barred from considering the merits of Petitioner's claim that Mo. Rev. Stat. § 558.018.5(2) is unconstitutional, and the Court turns to the merits of Petitioner's remaining three claims, all of which were adjudicated on the merits in state court.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus under 28 U.S.C. § 2254 cannot be granted unless the state court's adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision by a state court is "contrary to" clearly established law of the Supreme Court "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924-25 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable." Williams, 529 U.S. at 411; Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (explaining that under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable"). The factual findings of the state courts also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state courts "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Denial of Petitioner's Request to Remove Mr. Lundt as Defense Counsel**

Petitioner argues that his due process rights and right to the effective assistance of counsel was denied by the trial court's denial of his and Mr. Lundt's requests to replace Mr. Lundt, and the trial court's failure to inquire as to the nature of the breakdown between them. Unlike a defendant who retains his own counsel, an indigent defendant for whom counsel is appointed does not have a Sixth Amendment right to have a particular attorney

act as trial counsel.  See United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006); see also Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (stating the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his appointed counsel). Nevertheless, a criminal defendant does have the right to effective assistance of appointed counsel, and courts have recognized that this right may be endangered if the attorney-client relationship is bad enough.  An indigent defendant who is dissatisfied with appointed counsel must "show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between an attorney and the defendant."  Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991). "Once good cause is shown, a trial judge must appoint substitute counsel."  Id.  When a defendant raises a "seemingly substantial" complaint about counsel, the trial judge "has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction."  Id.

Here, Petitioner voiced his objection to Mr. Lundt approximately seven months after Mr. Lundt's entry of appearance and three months prior to trial.  To be sure, it would have been better had the trial judge inquired into the factual basis of Petitioner's dissatisfaction with Mr. Lundt and ruled on the motion in a timely fashion.  This Court is convinced, however, that failure to do so was not an error of constitutional magnitude.  Despite Petitioner's allegation in his November 1997 motion that Mr. Lundt was harassing him into pleading guilty, the fact remains that Petitioner did not plead guilty.  Furthermore, as the state appellate court noted, Petitioner did not ever reassert his protest to Mr. Lundt's representation, despite having many opportunities to so.  Indeed, the record reflects that Petitioner acquiesced in Mr. Lundt's continued representation, specifically so when the trial

court cautioned Petitioner about outbursts and advised Petitioner to consult with counsel if he had any suggestions. "[W]here a defendant articulates the reasons for his request for new counsel, the failure of a trial judge to inquire into that request is a 'procedural irregularity,' which may not itself be a basis for granting habeas relief." Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002) (quoting McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981)). Moreover, the record reflects that a second attorney from the Public Defender's Office also appeared as co-counsel at trial.

This Court also cannot say that the state courts' adjudication of Petitioner's claim with respect to the denial of Mr. Lundt's request to withdraw after the attack in the courtroom was contrary to Supreme Court law. "A court can properly refuse a request for substitution of counsel when the defendant's own behavior creates the problem." United States v. DeTemple, 162 F.3d 279, 289 (4th Cir. 1998). The state appellate court deferred to the trial court's factual finding that Petitioner's assault of Mr. Lundt in the courtroom was a premeditated act designed to get a mistrial. This Court's own review of the record leads it to conclude that this factual finding is entitled to the AEDPA's presumption of correctness, which finding Petitioner has not refuted with clear and convincing evidence. In sum, the Court concludes that Petitioner's constitutional rights have not been violated by the trial court's failure to replace Mr. Lundt as appointed counsel for Petitioner.

Petitioner's reliance on Holloway v. Arkansas, 435 U.S. 475 (1978), is misplaced. In that case defense counsel objected that he could not adequately represent the divergent interests of three codefendants. Id. at 478-80. Without inquiry, the trial court denied counsel's motions for the appointment of separate counsel and refused to allow counsel to

cross-examine any of the defendants on behalf of the other two. The Supreme Court held that this situation necessitated the automatic reversal of the defendants' conviction, since prejudice was presumed. Id. at 488. Subsequently, in Mickens v. Taylor, 535 U.S. 162, 168 (2002), the Supreme Court explained that the ruling in Holloway was limited to its facts, and that in other instances, in order to establish a violation of the right to the effective assistance of counsel, a habeas petitioner must show that the alleged problem adversely affected his lawyer's performance. See United States v. Poe, 428 F.3d 1119, 1123-24 (8th Cir. 2005) (explaining that Holloway is limited to its facts). The present case, of course, does not involve a single attorney representing multiple defendants.

**Prosecutor's Closing Argument**

Petitioner claims that he was deprived of a fair trial as a result of the trial court permitting the prosecutor to suggest during closing argument, over defense counsel's objection, that Petitioner's outbursts during the trial were indicative of Petitioner's propensity for violence. Petitioner argues that the prosecutor's closing argument "was inappropriate and diverted the jury from its fact finding task by swaying the jury in personalizing his argument." A prosecutor's argument violates due process if it infects the trial with unfairness. Darden v. Wainwright, 477 U.S. 168, 181 (1986). "'[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned.' The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id., 477 U.S. at 181 (although prosecutor's closing argument was improper in commenting that the death penalty would be the only guarantee against a future similar act, and in referring to the

defendant as an "animal" who should not be out of his cell unless he had a leash on him with a prison guard holding the leash, the comments did not deprive defendant of a fair trial, as they did not manipulate the evidence or implicate specific rights of the accused, such as the right to remain silent, and in view of the heavy evidence against the defendant) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)). A prosecutor's challenged statements must be viewed in the context of the entire trial. Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995). To be entitled to relief, a habeas petitioner must show that there is a reasonable probability that absent the alleged improper comments, the verdict probably would have been different. Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998); Newlon v. Armontrout, 885 F.2d 1328, 1336-37 (8th Cir. 1989).

Furthermore, under the AEDPA standard of review, Petitioner must show that the state appellate court's adjudication of this claim was an unreasonable application of existing United States Supreme Court law. See Weaver v. Bowersox, 438 F.3d 832, 839-42 (8th Cir. 2006); Kinder, 272 F.3d at 551. This combination of the due process standard and the AEDPA standard of review, together with a federal habeas court's "less reliable vantage point for gauging the impact of closing argument on the overall fairness of the trial," results in an "exceptionally limited review" of this issue. Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000) (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)).

Here, the state appellate court concluded that the prosecutor's reference to Petitioner's courtroom behavior could not have inflamed the jury more than witnessing the behavior itself, and that Petitioner should not be rewarded for that behavior by getting a

new trial because of it.  It is clear to the Court that this adjudication of this aspect of

Petitioner's due process claim was not contrary to Supreme Court precedents.

The prosecutor's other challenged comments were,

> It's time to stop him and time to tell him you are not going to touch our
> children, our young women again. . . . The children and the young people,
> women of this City need your vote right now.  Right now you are their voice
> and you are their only appeal.  You must convict him of all of those offenses.

Resp. Ex. A at 570.  The state appellate court ruled that these comments were in the range

of acceptable argument, stating general propositions about the safety of the community's

citizens and the jury's duty to uphold the law.  This Court has some trouble with the

characterization of these comments as "general propositions."  Nevertheless, upon review

of the trial transcript, the Court concludes that the state court's conclusion that Petitioner's

due process rights were not violated by the prosecutor's comments was not an unreasonable

application of Darden.  See Kinder, 272 F.3d at 551 (holding that state supreme court's

determination that the trial court did not abuse its discretion in overruling a defense

objection to prosecutor's argument stating, "We do not want to live behind locked doors

and barred windows.  We want our streets back . . . [a]nd our verdict is going to send a

message that we are not going to tolerate . . . this," was not contrary to Darden); Sublett,

217 F.3d at 600-01 (although it was improper for the prosecutor to ask the jury during

closing argument to find the defendant guilty of robbery to keep their community safe by

sending a message to other robbers and telling the defendant "[w]e don't ever want you

back," state court's determination that the comments did not so infect the trial with

unfairness as to make the resulting conviction a denial of due process was not contrary to

Darden); cf. Weaver, 438 F.3d at 840-42 (holding that "systematic" closing argument during penalty phase of death penalty case telling the jury that, among other things, executing the defendant was necessary to sustain societal effort as part of war on drugs was improper, and together with other improper arguments, warranted federal habeas relief).

Here, the prosecutor did not engage in a systematic improper argument. The challenged statements were relatively brief in the context of the entire closing argument, they did not misrepresent the evidence, and they did not implicate Petitioner's right to remain silent. Furthermore, the evidence of Petitioner's guilt was strong, and the jury was instructed that the closing arguments were not evidence. In sum, this Court cannot say that the decision of the Missouri Court of Appeals was contrary to United States Supreme Court precedents on the subject of closing argument.

**Claim of Ineffective Assistance of Counsel**

Petitioner argues that trial counsel rendered ineffective assistance in failing to request a mistrial when the prosecutor elicited Dr. Perdan's testimony, over counsel's objections, about what this victim told Dr. Perdan had occurred. Petitioner further asserts that this testimony improperly bolstered Ms. Turner's testimony, depriving Petitioner of his due process right to a fair trial. The Court construes this claim as encompassing the claim that counsel was ineffective in failing to preserve for appellate review the issue of the trial court's admission of the testimony in question.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must

establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different.  Id. at 694.  There is a strong presumption that counsel's performance fell "within the wide range of professional assistance."  Odem v. Hopkins, 382 F.3d 846, 850 (8th Cir. 2004) (quoting Strickland, 466 U.S. at 689).

Error by counsel, even if professionally unreasonable, does not necessarily require that a judgment be set aside.

> [A] defendant must affirmatively show prejudice.  It is not sufficient for a defendant to show that the error(s) had some "conceivable effect" on the result of the proceeding.  The defendant must show that [but for] counsel's error, there is a reasonable probability that the result of the proceeding would have been different.

Id.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In evaluating the probability of a different result, the court must consider the totality of the evidence.  Hoon v. Iowa, 313 F.3d 1058, 1061 (8th Cir. 2002).

Moreover, in the context of a § 2254 petition, a petitioner must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, "'he must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.'"  Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)).

Here, it does appear to this Court that Dr. Perdan's detailed narrative recounting Ms. Turner's version of the crimes committed against her went beyond what was relevant to explain Dr. Perdan's treatment decisions. Furthermore, although Petitioner was not identified as the perpetrator in Dr. Perdan's testimony, the evidence would have bolstered Ms. Turner's own testimony as to the details of the crimes, resulting in prejudice to Petitioner. Nevertheless, the Court cannot say that the state appellate court's rejection of Petitioner's ineffective assistance claim based upon counsel's failure to move for a mistrial after his hearsay objections were overruled was an unreasonable application of Strickland. In rejecting this claim, the state appellate court reasoned that a motion for a mistrial would not have been granted. But that was not the correct focus. The focus should have been whether the result of the appeal would have been different had the issue of Dr. Perdan's testimony been properly preserved (and raised on appeal).

This Court's own review of the record convinces the Court that the result of the appeal would not have been different. The evidence against Petitioner with regard to the crimes involving Ms. Turner was strong, with both Ms. Turner and the other victim of the crimes committed on January 23, 1997, testifying about the crimes and identifying Petitioner as the perpetrator. Thus, the prejudice resulting from Dr. Perdan's testimony would not have warranted a reversal of Petitioner's convictions on direct appeal. To the extent that Petitioner is asserting an independent claim that the admission of Dr. Perdan's testimony deprived him of a fair trial because her testimony improperly bolstered that of

22

Ms. Turner, this claim is also defeated by the above conclusion.

## CONCLUSION

Petitioner is not entitled to federal habeas relief on any of the claims asserted in his petition. The Court does not believe that "reasonable jurists" might find the Court's procedural and substantive assessment of Petitioner's claims for habeas relief "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(1)(A). See Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (setting forth standard for denying certificate of appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly

**IT IS HEREBY RECOMMENDED** that the petition of Donald Ware for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should be denied on all claims.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an

extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of August, 2006.